IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN P. ROGERS,                    *
                                   *
     Plaintiff,                    *
                                   *
vs.                                *    CIVIL ACTION 09-00368-WS-B
                                   *
MICHAEL J. ASTRUE,                 *
Commissioner of                    *
Social Security,                   *
                                   *
     Defendant.                    *

REPORT AND RECOMMENDATION

Plaintiff John P. Rogers ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral arguments were waived. (Doc.20). Upon careful consideration of the administrative record and the memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED.**

I.   Procedural History

Plaintiff protectively filed an application for supplemental security income on March 17, 2006. (Tr. 42-43). Plaintiff alleges that he has been disabled since February 25, 2006, due to depression, hernia and a right knee that pops in and out of place. (Tr. 76, 81). Plaintiff's application was denied at the initial stage, and

he filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 42-43, 50). On September 10, 2008, Administrative Law Judge Charles A. Thigpen ("ALJ Thigpen") held an administrative hearing, which was attended by Plaintiff, his representative, and a vocational expert. (Tr. 25-41). On January 9, 2009, ALJ Thigpen issued an unfavorable decision finding that Plaintiff is not disabled. (Tr. 9-24). Plaintiff's request for review was denied by the Appeals Council ("AC") on April 24, 2009. (Tr. 1-3). The ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. Id. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

A.    Whether the ALJ erred in relying on the RFC assessment prepared by the non-examining physician.

B.    Whether the AC erred in failing to consider new evidence in denying Plaintiff's request for review of the ALJ decision.

## III. Factual Background

Plaintiff was born on November 26, 1961 and has an eleventh-grade education[1]. (Tr. 28, 68, 76, 86). Plaintiff has past relevant work ("PRW") as a maintenance worker for an apartment complex. (Tr.

---

[1]While Plaintiff reported in the Disability Report that he completed eleventh grade and was not in special education classes, he testified that he completed ninth grade and was in special education classes. (Tr. 28, 86).

81-82, 94).  Plaintiff testified that he can read and write a little, but is not good with simple arithmetic.  (Tr. 28-29).

Plaintiff testified that he is unable to work because of problems with his knee, a hernia and depression.  (Tr. 29-30).  According to Plaintiff, he has a free fragment in his knee such that his bones rub, and he also suffers from arthritis.  (Tr. 30).  Plaintiff testified that Dr. Barrineau recommended surgery on his right knee, and that three other doctors have also recommended surgery for removal of the hernia; however, he does not have insurance; thus, he cannot afford to have either surgery. (Tr. 30-31).

Plaintiff testified that the pain in his knee is an "eight" on a scale of "one" to "ten," that he can walk about 30 minutes or about six feet, but he has to use a cane.  (Tr. 31-32).  Plaintiff also testified that he can sit for about an hour, but that his leg swells if he does not keep it propped up while sitting. (Tr. 32).  According to Plaintiff, he receives shots and is prescribed various medications for his knee pain. (Tr. 34).  Plaintiff also testified about various mental problems. (Tr. 33-34).

IV.  **Analysis**

    A.  **Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]  A court

may not decide the facts anew, reweigh the evidence, or substitute

its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d

1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must

be affirmed if they are based upon substantial evidence.  Brown v.

Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence

is defined as "more than a scintilla but less than a preponderance"

and consists of "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion[]").   In determining

whether substantial evidence exists, a court must view the record

as a whole, taking into account evidence favorable, as well as

unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792

F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS

10163 (S.D. Ala. 1999).

**B.   Discussion**

An  individual  who  applies  for  Social  Security  disability

benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.

Disability is defined as the "inability to do any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted

---

[2]This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir.
1987).

or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

In the case sub judice, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 17, 2006, the application date. (Tr. 14). The ALJ also found that Plaintiff has the following severe impairments: depression, hernia, and right knee problem. The ALJ concluded that Plaintiff's impairments, though

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

severe, do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. Id. The ALJ also found that Plaintiff's allegations regarding the intensity, persistence and limiting effects of his alleged symptoms were not entirely credible. (Tr. 21). The ALJ further found that Plaintiff retains the residual functional capacity ("RFC") to perform medium work, with moderate limitations of functioning in daily activities, social functioning, concentration, persistence, and pace. (Tr. 16). The ALJ, in reliance on the medical evidence and the testimony of the VE, concluded that Plaintiff is able to return to his past relevant work as a maintenance worker and material handler. (Tr. 23).

### 1. Medical Evidence

The relevant medical evidence[4] includes the results of a right knee x-ray dated January 30, 2006. That x-ray showed no evidence of recent fracture or other significant bony abnormality. (Tr. 170). The record also includes treatment notes from Alex K. Curtis, M.D., from March 2006 to June 2007. In treatment notes on March 22, 2006, Dr. Curtis stated that Plaintiff complained of chronic knee pain for several months, with a popping/grinding sensation when he walks.

---

[4]While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's application date of March 17, 2006, only that evidence which is relevant to the issues before the Court is included in the summary.

On physical exam, Dr. Curtis observed that Plaintiff's anterior and posterior cruciate ligaments were intact, his lateral and medial collateral ligaments were intact without laxity, and there was no significant deformity or significant patellar shift noted. Dr. Curtis further observed that Plaintiff's knee x-ray showed no fracture or dislocation, but that the joint space appeared somewhat narrowed. He diagnosed Plaintiff with chronic right knee pain, referred him for an MRI, and prescribed him Indocin[5]. (Tr. 238).

Plaintiff underwent a right knee MRI on March 27, 2006. The MRI resulted in a finding of a large focus of osteochondritis dissecans[6] involving the medial femoral condyle[7], and a free fragment in the lateral patellofemoral compartment[8]. The MRI also showed a degenerative chondromalacia[9] involving the medial tibial plateau and a popliteal cyst. The MRI was negative for meniscus or Lehman tear.

---

[5]Indocin is a nonsteroidal anti-inflammatory drugs used to treat moderate to severe rheumatoid arthritis, osteoarthritis, and ankylosing spondylitis. See, www.drugs.com. (Last visited March 26, 2010.)

[6]An osteochondritis dissecan is a partial or complete detachment of a fragment of bone and cartilage at a joint. See, www.nlm.nih.gov. (Last visited March 26, 2010.)

[7]A condyle is the inner side of the lower extremity of the femur. See, www.nlm.nih.gov. (Last visited March 26, 2010.)

[8]Patellofemoral compartment is one of three spaces about the knee between the patella and femur. See, www.medcyclopideia.com. (Last visited March 26, 2010.)

[9]Chondromalacia is abnormal softness of cartilage. See, www.nlm.nih.gov. (Last visited March 26, 2010.)

(Tr. 174).

Plaintiff had a follow-up visit with Dr. Curtis on April 4, 2006. Dr. Curtis noted that Plaintiff's MRI showed a large focus of osteochondritis dissecans ("OCD") involving the medial femoral condyle, a free fragment in the lateral patellofemoral compartment, degenerative condromalacia and a popliteal baker's cyst[10]. He prescribed Indocin[11], and referred Plaintiff to Bony Barrineau, M.D. (Tr. 237).

Plaintiff was evaluated for right knee pain by Dr. Barrineau at Demopolis Clinic on April 14, 2006. Dr. Barrineau noted that Plaintiff's MRI showed a big OCD lesion/medial femoral condyle with a large loose body, and that his examination of Plaintiff was consistent with that. Dr. Barrineau observed that Plaintiff has a loose body catching in his joint, and that he has a lot of grinding and crepitance. Dr. Barrineau recommended an outpatient orthroscopic procedure. He further stated that Plaintiff had been recently incarcerated, and that Plaintiff needed to get his knee fixed so "he can get back in the work force and be a productive individual." Dr. Barrineau advised Plaintiff to go to vocational rehabilitation

---

[10]Popliteal Baker's cyst is an accumulation of joint fluid (synovial fluid) that forms behind the knee. See, www.nlm.nih.gov. (Last visited March 26, 2010.)

[11]Indocin is a nonsteroidal anti-inflammatory drug ("NSAID") used to treat pain or inflammation caused by many conditions, including arthritis. See, www.drugs.com. (Last visited December 30, 2009).

services for assistance with the surgery, and indicated that if they could not help Plaintiff, then Plaintiff should go to Northport Hospital where they would set up payments for the services at a reduced rate. (Tr. 176).

Plaintiff was evaluated by Saima Kanwal, M.D., at Selma Family Medicine Center on June 16, 2006, at the request of the Agency.[12] On physical exam, Dr. Kanwal observed right revision of inguinal hernia, more prominent on coughing but reducible; multiple lineal healed lacerations in both arms; inability to heel and toe walk because of his right knee; straight right knee with limp; positive crepitus in right knee joint; back tenderness secondary to popliteal cyst; tenderness in medial epicondyle; tenderness along the right lateral epicondyle; positive medial collateral ligament test; range of motion on flexion of right knee within normal limits; limited range of motion on extension of right knee to 170 degrees; limited squatting due to right knee pain; and limited bending and picking up small objects due to straight right knee. (Tr. 199).

Dr. Kanwal's assessments were of right knee pain, popping, catching, and locking; right inguinal hernia; and depression with borderline personality disorder and suicidal ideation. He noted Plaintiff's MRI reflects a large focus of OCDs involving the medial femoral condyle, and degenerative chondromalacia involving the medial

_____

[12] Plaintiff reported knee pain commencing December 2005 when, while incarcerated, he was assigned the top bunk from which he had to jump, on a daily basis, with no support. (Tr. 198)

tibial plateau.   Dr. Kanwal recommended that Plaintiff have the outpatient arthroscopic procedures first as Plaintiff had problems with lots of bending and walking. Dr. Kanwal also recommended surgical repair of his right inguinal hernia, and psychiatric evaluation and anti-depression medication or psychiatric in-patient treatment. (Tr. 199).

Richard D. Carter, M.D., reviewed medical records and completed a Physical Residual Functional Capacity Assessment on July 25, 2006 at the request of the Agency.   Dr. Carter opined that, based on the March 27, 2006 MRI of Plaintiffs right knee, the April 16, 2006 medical opinion that Plaintiff needed arthroscopic surgery, and the July 16, 2006 consultative evaluation, Plaintiff is able to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, can stand/walk/sit about six hours in an eight-hour workday, and is unlimited in his ability to push and pull with his hands and feet. He further opined that Plaintiff can never climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, and should avoid all exposure to hazards such as machinery and heights.   Dr. Carter stated that Plaintiff can frequently balance, stoop, kneel, crouch and crawl, has no manipulative, visual or communicative limitations, and is unlimited in all environmental climates other than activities around hazards.   (Tr. 200-207).

Plaintiff had a follow-up visit with Dr. Curtis on August 14,

2006.  Plaintiff reported a large knot on his groin as well as continued right knee pain.  Dr. Curtis noted that Plaintiff was seen by orthopedics who recommended knee surgery; however, Plaintiff reported that he had no insurance, and as a result, was unable to afford surgery.  Upon examination, Dr. Curtis observed a right inguinal hernia which could be reduced and swelling in his right knee.  Dr. Curtis noted that Plaintiff had no instability in his knee, but he had crepitus on palpation and on movement.  He injected Plaintiff's right knee with Marcaine[13] and Depo-Medrol[14], and diagnosed Plaintiff with right inguinal hernia and internal derangement in the right knee.  (Tr. 236).

Plaintiff was treated at the Fitz-Gerald Perret Clinic on December 6, 2006.  Plaintiff reported that his nerves were "shot," and that his stomach and right knee hurt.  On physical exam, Plaintiff's extremities were symmetrical with a good range of motion, and no pedal edema was observed.  Plaintiff had positive pulses bilaterally, positive DTRs bilaterally and his gait was stable.  He was diagnosed with depression, anxiety, history of suicide attempt, self-abusive disorder and esophageal reflux.  (Tr. 234-235).

_____

[13]Marcaine is an anesthetic, used for numbing during dental or surgical procedures, labor, or delivery.  See, www.drugs.com. (Last visited January 4, 2010).

[14]Depo-medrol is an anti-inflammatory glucocorticoid for intramuscular, intra-articular, soft tissue or intralesional injection, used to treat severe inflammation due to certain conditions, including rheumatoid arthritis. See, www.drugs.com. (Last visited January 4, 2010).

On March 26, 2007, Plaintiff had a follow-up visit with Dr. Curtis at the Fitz-Gerald Perret Clinic. Plaintiff reported panic attacks and that he had been out of his medicine for over a month. On examination, Plaintiff had a regular heart rate and rhythm. Plaintiff was prescribed Klonopin and was encouraged to make an appointment with mental health, and to be responsible with his medication. (Tr. 233).

Plaintiff was treated at the emergency room at Bryan W. Whitfield Memorial Hospital on April 2, 2007. He reported taking an overdose of Klonopin. He also complained of anxiety, hallucinations, delusional thinking and suicidal ideation. (Tr. 275, 388). His physical exam revealed normal extremities with no pedal edema. An ECG reflected probable left ventricular hypertrophy. (Tr. 282, 391). Plaintiff was diagnosed with intentional drug ingestion. (Tr. 281, 390).

Plaintiff was seen by Dr. Curtis on June 12, 2007. Plaintiff reported pain in his right knee and panic disorder/attacks. On physical exam, Plaintiff's right knee was stable, but tender to palpation. Plaintiff was diagnosed with depression/panic disorder and knee pain. Plaintiff was given a refill on Klonopin and Zoloft, and continued on his current medications for his knee. Additionally, Plaintiff was encouraged to make an appointment with orthopedics "ASAP". (Tr. 231)

Plaintiff was treated at the emergency room at Bryan W. Whitfield

Memorial Hospital on June 13, 2007. He reported anxiety attacks, a knot by his "private area," and right knee pain. On physical exam, Plaintiff's extremities were listed as normal, and it was noted that no pedal edma was noted. Plaintiff was diagnosed with arthritis and hernia, and was encouraged to follow-up with Dr. Allegrea for hernia and Dr. Fitz for knee pain. (Tr. 261-272, 377-384).

Plaintiff returned to the emergency room at Bryan W. Whitfield Memorial Hospital on August 9, 2007. He reported depression and suicidal thoughts, with self-inflicted wounds in a suicide attempt. His physical exam was normal except for bilateral cuts on his upper extremities and ataxia. Plaintiff's clinical impressions were listed as depression and self-inflected wound. A chest x-ray on this day showed no active disease, and a ECG showed left axis deviation and left ventricular hypertrophy. (Tr. 239-251).

Plaintiff presented to Jackson Hospital Emergency Room on August 21, 2007, for staple removal. His current medication was listed as Seroquel[15]. His history of mental disorder and knee problem was noted. On physical exam, Plaintiff had a full range of motion in all extremities. It was noted that Plaintiff's wound areas were healing well. He was discharged in stable condition. (Tr. 373).

Plaintiff returned to Jackson Hospital Emergency Room on October 22, 2007. He reported problems with his knee and finger. Plaintiff

---

[15]Seroquel is an antipsychotic medication, used to treat schizophrenia or bipolar disorder. See, www.drugs.com. (Last visited January 4, 2010).

complained of moderate knee pain, occasional spontaneous "locking up" and inability to completely extend the joint. He further complained about tingling in his middle fingers. Plaintiff's physical exam revealed no extremity tenderness; full range of motion in all extremities; and no extremity edema. It further showed that Plaintiff had moderate tenderness to palpation over the right knee, but showed no evidence of soft tissue swelling over the right knee; no palpable effusion over the right knee; no sign of contusion; no evidence of hematoma over the knee; and no acute instability or subluxation. The ligaments surrounding the right knee were intact and the rest of the knee exam was okay. (Tr. 364). Plaintiff was diagnosed with knee pain and neuropathy, prescribed ibuprofen and discharged in stable condition. (Tr. 365).

Plaintiff was treated again at Jackson Hospital emergency room on February 3, 2008. He reported moderate knee pain, that he has had pain and swelling in his knee since 2005, and that he cannot afford knee surgery. He was ambulating with a cane, and was described as fully ambulatory and without loss of mobility. Plaintiff's physical exam did not reveal any extremity tenderness. Plaintiff was diagnosed with knee pain, prescribed Naprosyn[16] and Lortab[17], and discharged

---

[16]Naprosyn is an NSAID, used to treat rheumatoid arthritis, osteoarthritis, ankylosing spondylitis, and juvenile arthritis. See, www.drugs.com. (Last visited January 4, 2010).

[17]Lortab is a narcotic pain relievers, used to relieve moderate to severe pain. See, www.drugs.com. (Last visited January 4, 2010).

in stable condition.  (Tr. 413-414).

Plaintiff was treated at UAB Medical Center on August 26, 2008. He reported that he had not been compliant with his medications. He also reported knee pain, more on the right.  In addition, he reported symptoms of anxiety and depression.  (Tr. 442).  Plaintiff was diagnosed with depression and knee pain, and was given analgesics. (Tr. 443).

Following the ALJ's decision, Plaintiff presented additional medical documentation to the Appeals Council, namely a report of an MRI of Plaintiff's right knee dated February 16, 2009, and a Medical Source Opinion and Clinical Assessment of Pain dated March 6, 2009 by Dr. Curtis.  The MRI reflects very advanced degenerative arthritis of the medial knee with bone-on-bone apposition, very degenerative extruded meniscus, and moderate-sized joint effusion with a tubular Baker cyst that is intact and contains a calcified loose body.  It further showed a very small anterior horn lateral meniscus with degenerative thinning of the entire meniscus, well-preserved articular cartilage, and intact ACL, PCL, collateral ligaments, quadriceps and patellar tendon.  (Doc. 13-2 at 3-5).

In the Medical Source Statement, Dr. Curtis opined that Plaintiff could sit eight hours and stand or walk less than one hour in an eight-hour workday.  He further opined that Plaintiff could lift/carry up to 20 pounds occasionally and 10 pounds frequently, that he did not require an assistive devise to ambulate even

15

minimally, and that he had no need to avoid dust, fumes, or gases, or extremes of temperature, humidity and other environmental pollutants. Dr. Curtis opined that Plaintiff could rarely push and pull with his leg, bend, stoop or reach. He stated that Plaintiff could frequently push and pull with his arms, do fine manipulation, and operate motor vehicles, and could occasionally do gross manipulation and work with or around hazardous machinery. Dr. Curtis estimated that Plaintiff's impairments or treatment would cause him to be absent from work about twice a month, that these limitations would normally be expected from the type and severity of his diagnoses, and that his diagnoses are confirmed by objective medical findings, referring to an MRI. (Doc. 13-2 at 1).

Dr. Curtis also completed a Clinical Assessment of Pain on March 6, 2009, in which he states that Plaintiff reported that pain was present to such an extent as to be distracting to adequate performance of daily activities, and that his pain is greatly increased to such a degree as to cause distraction from tasks or total abandonment of task. He opined that Plaintiff could expect significant side effects from his medication that may limit his effectiveness of work duties or performance of everyday tasks. (Doc. 13-2 at 2).

### 2. Plaintiff's arguments

In this case, Plaintiff attacks both the ALJ's reliance on the assessment of a non-examining physician as well as the AC's decision to deny review. Upon review, the undersigned finds that the ALJ's

reliance on a non-examining medical consultant's assessment to determine Plaintiff's RFC was erroneous where the non-examining medical consultant did not include limitations identified by an examining physician, and the ALJ's decision does not address why the non-examining physician's opinion was credited over that of the examining physician. Under the Social Security regulations, state agency medical consultants are deemed highly qualified physicians "who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1257(f). However, the opinions of non-examining sources, "when contrary to those of examining[sources] are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F. 2d 278, 280 (11th Cir. 1987); See also Swindle v. Sullivan, 914 F. 2d 222, 226 n.3(11th Cir. 1990). An ALJ may rely on the opinions of non-examining sources when they do not conflict with those of examining sources. Edwards v. Sullivan, 937 F. 2d 580, 584-85 (11th Cir. 1991).

Dr. Kanwal examined Plaintiff on June 16, 2006 and found that Plaintiff was unable to heel and toe walk because of his right knee, and that Plaintiff could engage in limited squatting and bending due to his straight right knee. Dr. Kanwal recommended that Plaintiff have outpatient orthoscopic procedures, a recommendation that was also made by at least two other examining doctors. Dr. Carter, the medical consultant, reviewed the medical records in July

2006, and opined that that Plaintiff could frequently stoop, kneel, crouch and crawl, and that he could engage in medium work. Dr. Carter's opinion regarding Plaintiff's ability to stoop, kneel, crouch and crawl is clearly at odds with Dr. Kanwal's assessment that Plaintiff was limited in his ability to engage in squatting and bending due to his right knee; yet, the ALJ did not discuss the limitations noted by Dr. Kanwal, let alone provide any explanation for not including the limitations noted by Dr. Kanwal in Plaintiff's RFC, and in crediting Dr. Carter's opinion over that of Dr. Kanwal. It is also noteworthy that while Dr. Barrineau did not provide any physical limitations following his examination of Plaintiff in April 2006, he too observed that Plaintiff needed to have an outpatient orthoscopic procedure so that he could return to the workforce. Accordingly, the undersigned is unable to find that the ALJ's decision is supported by substantial evidence.

Plaintiff also contends that the new evidence presented to the AC should be made a part of the Court record, and that the AC erred in failing to consider this new evidence, which post-dated the ALJ's January 9, 2009 opinion, because there is a reasonable possibility that this evidence would have changed the outcome of the Commissioner's determination. According to Plaintiff, the conditions addressed in the new evidence were present during the time period under consideration by the ALJ and is material as it was prepared by his treating physician.

Defendant argues that the additional evidence is not probative because it is dated after the date of the ALJ's opinion and is therefore not material. He further argues that Plaintiff last saw Dr. Curtis eighteen months before the ALJ opinion was rendered, and that there is no good cause for Plaintiff's failure to produce a Medical Source Opinion from Dr. Curtis at some time prior to the ALJ's opinion.

"Generally, a claimant is allowed to present new evidence at each stage of the administrative process." Poellnitz v. Astrue, 349 Fed. Appx. 500; 2009 U.S. App. LEXIS 22996 (11th Cir. 2009)(unpublished)(citing 20 C.F.R. § 404.900 (b); Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260-61(11th Cir. 2007). "[N]ew evidence first submitted to the [AC] is part of the administrative record that goes to the district court for review when the [AC] accepts the case for review as well as when the Council denies review." Ingram, 496 F. 3d at 1264-65. The AC must consider new, material, and chronologically relevant evidence and must remand the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); Ingram, 496 F. 3d at 1261; see also Keeton v. Dep't of Health & Human Services, 21 F. 3d 1064, 1066 (11th Cir. 1994)(the AC is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law hearing.") The AC is also required to show in its written denial

of review that it has adequately evaluated the new evidence. <u>Robinson</u> <u>v. Astrue</u>, 2010 U.S. App. LEXIS 3450 (11th Cir. 2010)(unpublished). The AC may deny review, even in light of the new evidence, if it finds no error in the opinion of the ALJ. <u>Ingram</u>, 496 F. 3d at 1262.

Evidence is deemed 'new" when it is non-cumulative, and is deemed "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." <u>Milano v. Bowen</u>, 809 F. 2d 763, 766 (11th Cir. 1987).

With respect to the evidence submitted to the AC in the case at hand, a threshold inquiry is whether the new evidence is properly before this Court because it was not made a part of the administrative record. In a Notice of Appeals Council Action dated April 24, 2009, the AC stated as follows:

> In looking at your case, we considered the reasons you disagree with the decision. We found that this information does not provide a basis for changing the Administrative Law Judge's decision. We also looked at the MRI report dated February 16, 2009 and the assessment by Dr. Curtis dated March 6, 2009. The ALJ decided your case through January 7, 2009. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 7, 2009.
>
> If you want us to consider whether you were disabled after January 7, 2009, you need to apply again. We are returning the evidence to you to use in your new claim.

(Tr. 1, 2).

Attached to Plaintiff's brief which was filed with this Court is a copy of the MRI report dated February 16, 2009 and the assessment by Dr. Curtis dated March 6, 2009. Plaintiff argues that these

documents should have been made a part of the administrative record, and that they are properly before this Court.  The Commissioner acknowledges that because the AC considered the new evidence, and Plaintiff is appealing the AC's denial of review, the Court must consider the new evidence submitted to the AC.  (Doc. 15 at 6). The question thus boils down to whether the records constituted new, material, and chronologically relevant evidence such that there was a reasonable possibility that they would change the administrative result. For evidence to be new and noncumulative,it must relate to the time period on or before the date of the ALJ's decision. <u>See</u> 20 C.F.R. 404.970(b).  Evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefits in a new application, but it is not probative of whether a person was disbled during the specific period under review.  <u>See</u> <u>Wilson v. Apfel</u>, 179 F. 3d 1276, 1279 (11th Cir. 1999)(per curiam)(holding that a doctor's opinion one year after the ALJ's decision was not probative to any issue on appeal); <u>See</u> <u>also</u> <u>Smith v. Social Security Administration</u>, 272 Fed. Appx. 789, 2008 U.S. App LEXIS 7460 (11th Cir. 2008)(unpublished)(while the results of consultative examinations which were performed some four to six months after the ALJ's decision might strengthen the claimant's contention that the new evidence showed she was disabled, the reports were not chronologically relevant because they came after the ALJ's decision)

In this case, the evidence submitted to the AC post-dated the

ALJ's decision.  The February 2009 MRI was essentially cumulative in that it reflected a degenerative knee condition, a free fragment in the lateral patellofemoral compartment, and a popliteral baker's cyst, all items which were also reflected in the 2006 MRI.  Dr. Curtis' March 2009 assessment, which was prepared a mere two months after the ALJ's decision, presents a much closer question.  However, as the Commissioner correctly points out, the assessment was prepared after the ALJ's decision, and while Dr. Curtis had previously treated Plaintiff for chronic right knee pain, his 2009 assessment was prepared nearly two years after Dr. Curtis had last seen Plaintiff in 2007. Thus, while it is clear that Dr. Curtis was familiar with Plaintiff's right knee condition and with both Plaintiff's 2006 MRI and Plaintiff's 2009 MRI, and as a result, would likely be in a unique position to render an opinion about whether Plaintiff's limitations were present during the relevant time period, Dr. Curtis' 2009 assessment does not reference the relevant time period nor does it contain any opinion with respect to whether Plaintiff's limitations existed during the period prior to the ALJ's decision.  Accordingly, the AC correctly found that it is not chronically relevant.

## V.    **Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits, is due

to be **REVERSED and REMANDED.**

       **DONE** this **25th day of July, 2010.**

                                         **/s/ SONJA F. BIVINS**
                               **UNITED STATES MAGISTRATE JUDGE**

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within **fourteen** (14) days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)( c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [18] days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within fourteen (14) days of served with being a copy of the statement of objection.  Fed.R.

---

[18]The Court's Local Rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

Civ. P. 72; SD ALA LR 72.4(b).

3.  **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate
judge finds that the tapes and original records in this action are
adequate for purposes of review.  Any party planning to object to
this recommendation, but unable to pay the fee for a transcript,
is advised that a judicial determination that transcription is
necessary is required before the United States will pay the cost
of the transcript.

                    **/s/ SONJA F. BIVINS**
            **UNITED STATES MAGISTRATE JUDGE**